UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PTG NEVADA, LLC,<br><br>    Plaintiff,<br><br>V.<br><br>WAI CHAN, JOHN PURFER, RANDY PAXTON, STEPHANI FEDOROVICH, and MICHAEL AFFRUNTI,<br>    Defendants. | CASE NO. 1:16-cv-01621<br><br>Assigned Judge:<br>    The Honorable Sara L. Ellis<br><br>Designated Magistrate Judge:<br>    The Honorable Sheila Finnegan |

## **DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

Defendant Michael Affrunti ("Defendant") files this motion to dismiss the copyright infringement claim of Plaintiff PTG NEVADA, LLC ("Plaintiff"), under Federal Rule of Civil Procedure 12(b)(6), showing in support as follows:

### INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff is a media company. It alleges that Defendant infringed the copyright it holds in the film *Pay the Ghost* (hereinafter "the Work"). Plaintiff alleges that it used geolocation technology to identify an IP address with a Comcast account that is held in Defendant's name. Plaintiff alleges that this IP address was used to access a file-sharing swarm associated with the

1

Work. On this factual basis alone, Plaintiff has brought suit against this Defendant and many others.

## LEGAL STANDARD

In 2007 and 2009, the Supreme Court twice raised the standard of review for 12(b)(6) motions. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In order to survive a 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 668 (citing *Twombly*, 550 U.S. at 570).

The Court in both *Twombly* and *Iqbal* heard plaintiffs allege circumstances in which the defendants *could have* acted unlawfully, but were unable to truthfully allege circumstances in which the defendants *actually did* act unlawfully. The instant case is much the same. Plaintiff cannot truthfully allege circumstances in which Defendant acted unlawfully. Instead, Plaintiff alleges facts that, even if given the presumption of truth, can only prove that Defendant could have infringed. This is far below the standard of a facially plausible cause of action required by *Twombly* and *Iqbal*, for the reasons stated below.

## ARGUMENT

In order to determine whether the pleadings meet the standard of *Twombly* and *Iqbal*, we begin with the assumption that all facts alleged within the Complaint are true. If so, has an unlawful act been committed by the defendant?

To answer, we examine first what facts must be proven to make a prima facie case of copyright infringement, and then we examine what facts Plaintiff has alleged. Copyright infringement has but two elements: one, that a copy was made, and two, that this defendant made it. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff alleges that a device used Defendant's IP address to participate in a file-sharing swarm, and that this swarm unlawfully reproduced and distributed Plaintiff's copyrighted work. Plaintiff has not factually pled either element of its prima facie case; it has not pled that Defendant made a copy, and it has not pled that a copy was made.

**Plaintiff has failed to plead that any specific defendant has infringed.**

Plaintiff's factual allegations rely upon Exhibit B of its Complaint, which purports to show that the IP address at hand was associated with a file-sharing swarm at specific times. An IP address is associated with an Internet Service account; in Defendant's case, this is the Comcast account for which he paid, which was shared among his roommates at the time alleged. This means that any device that connected to the Internet through Defendant's router could have engaged the swarm: roommates, visitors, family, unscrupulous neighbors, anybody to pass within the zone of the wifi router, anybody with a lick of hacking skill and the desire to hide their own IP address. Furthermore, geolocation systems such as the one Plaintiff used to identify the IP address can be riddled with errors. During preliminary research on this matter, Defendant's

attorney did a geolocation search on Defendant's IP address and found one in Wheeling and one in Indiana. See Exhibit A.

The number of devices that could have been responsible for the results of Plaintiff's nebulous geolocation technology is staggering. It is unfair to each defendant served - of which there are many - and burdensome to an already overburdened court system, to allow Plaintiff into the discovery phase of litigation based on this broad allegation. And it is worth noting that Plaintiff openly admits that it intends to use the discovery process to discover "further infringing parties" – in other words, anybody connected with this IP address, each of whom may expect a demand letter. See Complaint, ¶ 11 ("Plaintiff believes that additional information obtained in discovery will lead to the identification of additional infringing parties, as monitoring of online infringement of Plaintiff's motion picture is ongoing."). We ask that this Court not lose sight of the scope of Plaintiff's activities. Defendant is not merely the defendant; he is the gateway to other, new defendants for Plaintiff to sue.

Courts have already concluded that the person paying an Internet bill may not be the purported infringer. See *VPR Internationale v. Does* 1-1,017, No. 11-02068 (ECF Doc. 15 at 2), 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011) ("Where an IP address might actually identify an individual subscriber and address, the correlation is still far from perfect . . . [t]he infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."). Other courts in this Circuit have also discussed this issue and reached the same conclusion. See, e.g., *Malibu Media, LLC v. Reynolds*, Case No. 12-cv-6672 (ECF Doc. 51 at 13) (N.D. Ill Mar. 7, 2013); *TCYK, LLC v. Doe*, 2013 U.S. Dist. LEXIS 88402, 6 (N.D. Ill. June 24, 2013) ("the increasing ubiquity of wireless networks

4

undermines the copyright holder's assumption that the ISP subscriber is the copyright infringer"). Courts further afield have found the same. See *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) ("It is no more likely that the subscriber to an IP address carried out . . . the purported illegal downloading . . . than to say an individual who pays the telephone bill made a specific telephone call."). And courts in this district have begun to foreclose the possibility of the discovery fishing expeditions that Plaintiff plans, finding that it is not a "reasonable calculation that the individuals connected to the subpoenaed IP addresses will have any discoverable information related to the current defendants." *Pacific Century Int'l, v. Does 1-37*, 282 F.R.D. 189, 195 (N.D. Ill. Mar. 30, 2012). Courts are growing wise to what this sort of litigation actually is: Plaintiff, in essence, is suing a location.

      Plaintiff's pleading strategy casts a wide net. It will sue anyone associated with a particular IP address, serving each with completely identical complaints. It will collect settlements and payouts from those victims too scared or poor to go to court. And it will profit, because the number of people who give in will far exceed the number who fight. This strategy depends on Plaintiff being able to sue, or threaten to sue, many people at once. And it is able to sue many people at once because it pleads through the net of an IP address, which can ensnare anyone who passes through it. Mere association with an IP address cannot be plausible enough for a claim of copyright infringement to survive modern pleading standards. Permissive joinder rules also facilitate this form of action; Plaintiff's exaggerated allegations about the boundaries of its knowledge, and the Court's reliance on these allegations, allows for the early discovery that identifies many defendants.

**Plaintiff has failed to allege that a copy was made.**

We now turn to Plaintiff's allegation that Defendant unlawfully reproduced the Work. Plaintiff alleges that a device associated with Defendant's IP address participated in a file-sharing swarm, and that this swarm unlawfully reproduced and distributed Plaintiff's copyrighted work. Plaintiff never factually alleges that anyone associated with this IP address actually made a copy of the Work. Plaintiff cannot provide factual allegations to support its allegation that the swarm reproduced the Work, because the mere presence of a swarm does not indicate a complete copy, or even a substantial portion of one.

Plaintiff explains how a swarm works in the BitTorrent system: "The initial file-provider intentionally elects to share a file with a torrent network. This initial file is called a seed. Other users ("peers") and the network, through a series of steps, connect to the seed file to download a movie. As additional peers request the same file, each additional user becomes a part of the network from which the file can be downloaded. Each new file downloader receives a different piece of the data from each user who has already downloaded the file that together comprises the whole. This piecemeal system with multiple pieces of data coming from peer members is usually referred to as a "swarm." " (Complaint at ¶ 4.)

BitTorrent's website picks up where Plaintiff conveniently leaves off: "While on the surface, it appears that the only way to maintain a swarm's health is for there to always be a seed connected to the swarm, that is not the case. The most important factor to determining whether a swarm can continue to allow peers to complete a torrent is the availability. The availability of a

6

torrent is the number of complete copies of the torrent contents there are distributed in the part of the swarm you're connected to, including the data you have. In most cases, if there is an availability of 1.0 or greater, then even if one single person does not have all the pieces, they are all still distributed across the entire swarm and can be acquired to form the complete file." (bundle-help.bittorrent.com)

      In other words, not every swarm contains a complete copy of its seed file, either whole and on one device, or scattered among many. Being in a swarm does not mean you have copied. It only means you have tried to copy. And as much noise as Plaintiff makes about "deliberate" and "willful" participation in a swarm, copyright infringement is a civil offense, not a crime. Attempted infringement is not infringement. For copyright infringement to occur, a copy must be made, one that is substantially similar to the original and able to be viewed by an audience. *Feist*, 499 U.S. at 361. Plaintiff makes loosely defined allegations that the swarm "reproduced" and "infringed" its Work, but can provide no factual support that anybody actually finished their download. It cannot even factually allege that the swarm had an availability of 1.0 or greater. And as another Court has correctly recognized, prior to at least substantial completion of a BitTorrent download, the torrent file is only an "encrypted, unusable chunk of zeroes and ones," and not a copy at all within the legal definition. *Ingenuity 13, LLC v. Doe*, 2013 U.S. Dist. LEXIS 16952, *7 (N.D. Cal. Feb. 7, 2013).

      Furthermore, Plaintiff's method of "catching" infringers is suspect, as a court in the Ninth Circuit explains, referring to the spreadsheet results of a geolocation tracker like the one Plaintiff has filed as Exhibit B of its Complaint: "[t]his snapshot allegedly shows that the Defendants were downloading the copyrighted work—at least at that moment in time. But downloading a

7

large file like a video takes time . . . . [i]n fact, it may take so long that the user may have terminated the download. The user may have also terminated the download for other reasons. To allege copyright infringement based on an IP snapshot is akin to alleging theft based on a single surveillance camera shot: a photo of a child reaching for candy from a display does not automatically mean he stole it. No Court would allow a lawsuit to be filed based on that amount of evidence." *Ingenuity 13, LLC v. Doe*, 2013 U.S. Dist. LEXIS 16952, *7 (N.D. Cal. Feb. 7, 2013).

Plaintiff has dragged five defendants into court, with all of its expenses, on the bare allegation that someone used this IP address to attempt to download an unlawful copy of a Nicolas Cage film. Plaintiff seeks statutory damages from each defendant, and stated in its demand letter that it would accept no less than $4,900 to settle after May 6, 2016. Plaintiff sent the letter on April 8th, 2016. (See Exhibit B, Plaintiff's demand letter.) Some defendants likely lack the means to defend themselves against Plaintiff's allegations. Without 17 USC § 505, granting attorney's fees to the prevailing party, Defendant himself would be forced to either settle, seek the ever-elusive pro bono counsel, or proceed pro se, in forma pauperis, and at a distinct disadvantage. And let us take a moment to recall, once again, that Plaintiff openly admits that it intends to uncover "additional infringing parties" during the discovery process, all of whom will undoubtedly receive demand letters seeking in excess of four thousand dollars apiece. See Complaint, ¶ 11. All of this, premised on the allegation that someone used this IP address merely to *seek* an unlawful copy of Plaintiff's work – *which is not itself unlawful*.

Plaintiff has not alleged that a copy was made. The assertions that Defendant "infringed" or "reproduced" the Work that are peppered throughout the Complaint are unsupported by any factual allegations; they are conclusory and may be discarded.

**Plaintiff is not entitled to the presumption of truth in its allegations.**

We have thus far presumed the truth of Plaintiff's allegations that Defendant's IP address was involved in a swarm, if only for the sake of argument. But we need not presume the truth of every allegation, and indeed allegations that are "mere conclusions" are not entitled to the presumption of truth. *Iqbal* at 670. The allegation naming this IP address is as flimsy as a cobweb. Exhibit B of the Complaint purports to prove the presence of this IP address in a swarm, but the exhibit is merely columns of fields and data without clear meaning. The complaint offers no explanation of how to decipher them, or what they prove, or even what software or service provided them. All of this is presented under the aegis of "information and belief."

Plaintiff may also deliberately hamper its own investigation. Despite the fact that Plaintiff cannot plead that any particular individual has downloaded a full copy of the Work, it is perfectly possible to know if a participant in a file-sharing swarm has downloaded a whole copy. The amount of the file downloaded by a BitTorrent user is called the bitfield value. Cohen, B., *The BitTorrent Protocol Specification* (Oct. 20, 2012), available at, http://www.bittorrent.org/beps/bep_0003.html. This bitfield value could show that a peer has downloaded anywhere from 0% to 100% of the swarm file. Plaintiff could learn from the bitfield value of each peer whether that peer has downloaded a substantial portion of its Work - and a substantial portion of the Work must be copied for infringement to occur. *Feist* at 361. This

means that Plaintiff could easily identify the real infringers of the Work. But Plaintiff isn't interested in this information - and why would it be? Why would Plaintiff narrow its focus when it could sue everybody connected to the swarm, and everybody connected to every IP address connected to the swarm?

Furthermore, Plaintiff claimed in its demand letter that it *did* have this information: "We also have obtained the filename of the movie, the *file size* and the GUID, all corresponding to an IP address that was assigned to your ISP account at the time the infringing activity occurred." See Exhibit B, second paragraph (emphasis added). Nothing on the spreadsheet included has the file size. The fields are the John Doe number, the IP address, the filename with movie name and the torrent publisher name, the SHA-1 hash number (which provides the algorithm used to compress and unpack data and is usually unique to each swarm participant), the ISP, the state, the city, and the county. Plaintiff may very well have the bitfield value, or some other information that would show that the file was fully downloaded. But they have not provided it in the pleadings. And why not? If Plaintiff has information that could meet *Iqbal*'s standard, why not give it? If Plaintiff cannot be trusted to provide available information that would reveal whether infringement has occurred at all, then neither should we trust the information it does provide. This Court owes Plaintiff no presumption of truth for any of its factual allegations.

This litigation depends upon fear. Plaintiff's victims fear the ever-increasing costs of litigation, and Plaintiff leverages that fear into settlements. This strategy is not unique to this specific plaintiff. See Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105-1146 (2015). Plaintiff, and other plaintiffs like it, detects a swarm with at least some fraction of a copy of its copyrighted Work. It uses vaguely described, error-prone, and altogether

factually questionable geolocation technology to identify IP addresses which interacted with the swarm. It determines which judicial districts will be most favorable to suit, and then subpoenas internet service providers in that district to discover names associated with those IP addresses. It then sends demand letters to every possible name it can find connected with a suspect IP address. Plaintiff expects - counts upon - the fact that the majority of its victims will settle for nuisance value. Plaintiff has sued five people in this action alone, alleging that *one* of them may have attempted to download a copy of the Work. And it will get settlements from at least some of those five.

    This Court has an opportunity to prevent continued misuse of the Federal Rules of Civil Procedure to subvert justice. Plaintiff has used this action in Federal Court not for a genuine case of copyright infringement that can stand on its pleadings, but, instead, to collect money from unnamed defendants in defiance of Federal Rule of Civil Procedure 4. Status hearings asking for delay did not include reports of the pressure brought to bear on would-be defendants whose day in court might have protected them. The merits of the case lack relevance to Plaintiff whose true purpose in this action is to mine for names and addresses of other likely non-infringers to whom additional financial demand letters will be mailed. Plaintiff admits to this in its Complaint. See Complaint, ¶ 11.

    We urge the Court to dismiss this action, and to firmly bar this Plaintiff and others like it from the realm of discovery. This Court has the power and the justification - provided by *Twombly* and *Iqbal* - to stop this litigant in its tracks. We beg the Court to do so. Require the Plaintiff to meet factual pleading standards. Do not allow Plaintiff into discovery.

Case: 1:16-cv-01621 Document #: 27 Filed: 09/13/16 Page 12 of 16 PageID #:131

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Date: September 12, 2016            Respectfully submitted,

Michael Affrunti

By:    /s/Susan Malter
*Counsel for Defendant*
Susan Malter 6207793
203 Brampton Lane
Lake Forest, IL  60045
(224) 552-0452

# Exhibit A



# Exhibit B