UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PTG NEVADA, LLC,<br>    Plaintiff,<br><br>v.<br><br>WAI CHAN, JOHN PURFER, RANDY PAXTON, STEPHANI FEDOROVICH, and MICHAEL AFFRUNTI,<br>    Defendants. | Case No. 1:16-cv-01621<br><br>The Honorable Sara L. Ellis, Assigned Judge<br><br>The Honorable Sheila Finnegan, Designated Magistrate Judge |

**DEFENDANT MICHAEL AFFRUNTI'S REPLY TO PLAINTIFF PTG NEVADA, LLC'S RESPONSE TO MOTION TO TAKE JUDICIAL NOTICE OF FACTS**

Defendant Michael Affrunti by and through its undersigned counsel replies in support of its Amended Motion Requesting the Taking of Judicial Notice of Adjudicative Facts by this Honorable Court.

**I.    Introduction**

Five true facts were presented by Defendant Michael Affrunti ("Defendant") in the Amended Motion Requesting the Taking of Judicial Notice of Adjudicative Facts by this Honorable Court ("this Motion"). Amended Motion Requesting the Taking of Judicial Notice of Adjudicative Facts by this Honorable Court. Three additional true facts were presented in the Declaration by Defendant's Expert Rejaie. Declaration of Reza Rejaie in Support of this Motion ("Rejaie's Declaration").

This reply will show that seven of the eight facts offered by Defendant were undisputed by Plaintiff, and the eighth was not disputed but for the mistaken assumption made by Plaintiff. Two of the eight are supported with additional information that is now being presented.

Plaintiff's Response to this Motion, *passim*. Judicial notice may be taken at any time. Fed. Rul. Ev. 201(d).

Plaintiff PTG Nevada, LLC, ("Plaintiff") has attempted to confuse matters by offering facts that are untrue and by arguing that true facts should be ignored. In this case Plaintiff PTG Nevada, LLC, ("Plaintiff") has led Defendant Michael Affrunti ("Defendant") on a post-truth odyssey. In Plaintiff's Response to this Motion ("Plaintiff's Response") (a) Plaintiff tries to argue that the court lacks the necessary information by (1) misstating what has been proffered by Defendant and (2) by asserting that the admissions of its own expert should be considered denials; (b) Plaintiff tries to prevent judicial notice by adding two new requirements to Rule 201; (c) Plaintiff tries to discourage judicial notice by pointing to a distinguishable case where the fact at issue had been found by the deciding judge in that case; and(d) Plaintiff tries to disguise its inability to identify an individual user from an IP address by (1) claiming that facts that are known to be false must be deemed true by virtue of being embedded in an allegation, and (2) attempting to make the facts sound more complicated than they are. Plaintiff's Response, *passim*.

Plaintiff is wrong. Plaintiff's objections should not prevent this case from having the benefit of facts that are beyond reasonable dispute. In this matter, if this Honorable Court takes judicial notice of facts that are not reasonably disputed, then Plaintiff's Complaint will fail the tests of *Iqbal* and *Twombly*.

Defendant would like this Honorable Court to have the benefit of accurate and true facts in making its determinations throughout the proceedings. Judicial notice of publicly known facts is permitted to assist a court in determining whether the allegations of a complaint are sufficient to survive a 12(b)(6) motion. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 f.3d

1074 (7th Cir. 1997). Judicial notice allows facts to be heard without converting the motion to one for summary judgment. *Id*.

## II.  Facts Not Disputed By Plaintiff - Solid Ground

Four facts for which Defendant has requested judicial notice are corroborated by Plaintiff's Declarant Arheidt. Arheidt Declaration, para. 4,5, 7, and 8 (confirming Rejaie, para. 3, 4, 6, and 7 and confirming *a* and *e* of this Motion). The declarant of Plaintiff admits that these facts are true; he goes on to describe the true facts as irrelevant or not applicable. Response, p. 4-5. The truth of the facts has been admitted. Plaintiff, unwilling to concede the truth of the facts admitted, manufactures two new requirements for judicial notice, (1)no generalities and (2) application to the case. Id, p.5.  Plaintiff asks this Honorable Court to refuse to notice facts on the basis of Plaintiff's new rules grafted to 201. Plaintiff offers no authority for such a refusal.

### A.  An IP address can be associated with a computer for a short period of time.

The declaration submitted by Defendant is undisputed by Plaintiff. Arheidt Declaration, para. 4 (cited by Plaintiff in Response, p. 4 with respect to Rejaie, para. 3).

### B.  Appearance on a BitTorrent Tracker is Not Evidence of Downloading, Uploading, or Infringement.

This was affirmed by the Arheidt Declaration and by the absence of dispute by Plaintiff. Plaintiff's Response, p. 4.

### C.  A Client on BitTorrent May Only Download a Few Pieces of a File that Are Neither Viewable nor Useful.

This is confirmed by Arheidt and not disputed by Plaintiff.

## III.  Facts that Make the Deficiency of Plaintiff's Complaint More Clear

This is precisely why Defendant has requested judicial notice of adjudicative facts. In the papers filed by Plaintiff, there is an attempt to create a sense of unreality. Plaintiff asserts inconsistent facts and muddies the waters, so that this Honorable Court may be uncomfortable making a holding or finding about the technology. Plaintiff continues to try to extort my client by suggesting that these facts are not concrete. The inconsistencies highlight the agenda of Plaintiff.

### A. An IP address may not identify a user.

This fact is neither disputed by the Arheidt Declaration nor by Plaintiff's Response: "Even if such an association between a computer and an IP address is established, this may not provide any indication about the identity of a user. For example, multiple computers that are used by different individual in a single apartment or a facility typically use the same IP address to access various services on the Internet. In such a setting, it is not feasible to associate a specific user to that IP address." Rejaie, para.3. Plaintiff describes this fact to be too general and without bearing on the instant case. Plaintiff's Response, II C, p. 6. Plaintiff is mistaken. This fact is the reason that the Complaint does not pass Iqbal and Twombly. Plaintiff has made no allegation to explain its leap to a belief that Defendant is the computer user.

Plaintiff never directly disputes the claim, and Arheidt provides an "even if true" comment. Arheidt, para. 4. That is because it is true. In a table, however, Plaintiff completely rewrites Rejaie's statement to say, "Under certain circumstances, not relevant to the instant case, an IP address *might* not necessarily identify individual users of computers regardless of a name on an account." Plaintiff's Response, II A, p. 2. Plaintiff then argues that its own rewritten version of Rejaie's statement does not support Defendant's claim. Id.

### B. A BitTorrent Client Has the Option of Downloading without Uploading.

This is confirmed by Arheidt and not disputed by Plaintiff. Arheidt, para. 8. Plaintiff has this fact in both its charts on pages 3 and 5 of Plaintiff's Response. The facts about leech mode are supported by Reza Rejaie's declaration, "A client who participates in a torrent may only download a file but do not upload any pieces of that file to other clients." Reza's Declaration, para. 7.  A peer in BitTorrent can choose to operate without uploading at all.

This fact also belies some of the Macek declaration and statements made in multiple documents by Plaintiff. Macek Declaration, para.10 and 11; Complaint, *passim;* Memorandum in Support of Discovery. The facts offered by Defendant that are confirmed by Daniel Arheidt are Reza Rejaie's paragraph 3, paragraph 4, paragraph 6, and paragraph 7. Plaintiff's Response, p. 4.

Defendant requests judicial notice in part because Plaintiff is trying to muddy the waters with inconsistent assertion of facts to make this process more confounding and expensive for Defendant.

IV.     **Facts Disputed Only Because Plaintiff Makes Incorrect Assumptions –Plaintiff Disputes Its Own Manufactured and Wrong Version of Defendant's Claims.**

**Computer Users May Unintentionally Participate in a  Particular Torrent**

It is quite clear from the statement made by Arheidt that Plaintiff's expert has made a false assumption. Arheidt states his assumption that no computer user has BitTorrent software already loaded onto a computer. Because of that faulty assumption, Arheidt suggests that a computer user must download BitTorrent in order to participate in a swarm, "Instead, the computer user had to install special software on his computer, undertake a specific configuration process on his computer and then search." Plaintiff's Response, p. 4. Arheidt's error does not pose a reasonable dispute. Out of an abundance of caution, Defendant will explain further. Software installation and configuration are certainly not required on computers where the software is already installed. Computer users may have BitTorrent or some other data-sharing

software loaded onto their computers without doing anything improper. The assumption of the absence of freely available software on an unknown computer is not appropriate or reasonable.

Plaintiff's dispute is not with the fact offered by Rejaie but with a fact that Plaintiff has misunderstood. "Computer users are often unknowingly redirected to a torrent once they click on a link at a seemingly unrelated web site. Therefore, even if a computer appears in a torrent, this does not indicate that the user has intentionally decided to join the torrent for the purpose of downloading or uploading a file." Rejaie, para. 5. Professor Rejaie wrote his declaration on his own independent of Defendant based on the professor's own scholarly work. The dispute here is neither reasonable nor likely to be maintained by Plaintiff with this corrected understanding if Plaintiff is held to a standard of truthfulness. Arheidt, if competent, would not disagree with the fact if he understood the statement and left out the assumption that excludes BitTorrent from computers. Defendant agrees that the initial setting up of BitTorrent software would be intentional. That is a distinct and separate fact.

V.      Necessary Information and Timing

For two of the facts described in this Motion, Plaintiff argues that the necessary information was not provided. Defendant respectfully disagrees. For convenience, Defendant will provide additional information. Judicial notice may be taken at any time. Fed. Rul. Ev. 201(d).

   A.      BitTorrent is Used Throughout the Country and World

The University of Michigan, Stanford, MIT, University of Massachusetts-Boston, Politecnica, and more institutions share data on BitTorrent. Cohen, J.P., & Lo, H.Z. Academic Torrents: A Community-Maintained Distributed Repository (2014), available at academictorrents.com.   BitTorrent hosts community-maintained distributed repositories for

datasets and scientific knowledge. Id. One cannot otherwise download NASA's 42 gigabyte map of Mars. Id. The named universities are linked to the site and their open sponsorship cannot reasonably be questioned.

Twitter uses BitTorrent and opens its BitTorrent sharing system to the public. Larry Gadea, *Murder: Fast Data Center Deploys Using BitTorrent*, The Official Twitter Blog, July 15, 2010. https://blog.twitter.com/2010/murder-fast-datacenter-code-deploys-using-bittorrent Twitter's website directs users to Twitter's BitTorrent menu. Twitter's accuracy about its own use of BitTorrent cannot reasonably be questioned.

Arheidt and Plaintiff's irresponsible statement that Professor Rejaie's statement is false comes from their assumption that computers should not have BitTorrent loaded onto them. Instead of recognizing the possibility that computer users have BitTorrent installed as participants in the Open Source Community or for any of the many non-pirate reasons, Plaintiff begins with a false assumption.

People who have BitTorrent on their computer can with a mere click connect to a torrent. Plaintiff's declarant assumes in Plaintiff's Response that no individual should have BitTorrent in the first place. This sort of false assumption permits Plaintiff to create layers of false facts with the pretense of misunderstanding or by actually not understanding.

### B. SHA-1 Repudiation Cannot Be Reasonably Disputed.

#### 1. SHA-1 hash checksums are not considered secure.

On April 29, 2016, Microsoft announced the dates by which Microsoft will be blocking SHA-1 certified websites because of their lack of security. "These sites will continue to work, but will not be considered secure." Microsoft Edge Team, *An update to our SHA-1 deprecation roadmap,* Windows, April 29, 2016. https://blogs.windows.com/msedgedev/2016/04/29/sha1-

deprecation-roadmap/#xkkOTCEuYv36QPxI.97.  Mozilla also is phasing out SHA-1 hash checksums. Kathleen Wilson, *Phasing Out Certificates with Sha-1 based Signature Algorithms,* Mozilla Security Blog, September 23, 2014.

https://blog.mozilla.org/security/2014/09/23/phasing-out-certificates-with-sha-1-based-signature-algorithms/  These announcements are primary sources.

Google's announcement that SHA-1 hash checksums are no longer deemed secure was offered with a citation to Google's own post in Defendant's original motion regarding judicial notice. Defendant's Motion to Take Judicial Notice. Google's accuracy about its own announcement cannot reasonably be questioned. Google's Security Blog refers to the sunsetting of SHA-1 hash checksums. September 5, 2014. *Gradually sunsetting SHA-1,* Google Security Blog https://security.googleblog.com/2014/09/gradually-sunsetting-sha-1.html.

Plaintiff's Memorandum in Support of Plaintiff's Motion For Leave To Take Discovery Prior To Rule 26(f) Conference ("Plaintiff's Memo") misleadingly described SHA-1 hash checksums in a document on which this Honorable Court relied. Instead of accurately presenting SHA-1 as no longer secure, Plaintiff described the algorithm in a manner that suggested quite the opposite:

 "Any digital copy of an audiovisual work may be uniquely identified by a unique, coded, string of characters called a 'hash checksum.' The hash checksum is a string of alphanumeric characters generated by a mathematical algorithm known as U.S. Secure Hash Algorithm 1 or 'SHA-1', which was developed by the National Security Agency and published as a U.S. government standard. Using a hash tag to identify different copies of the Motion Picture, it was confirmed that these users reproduced the very same copy of the Motion Picture." Plaintiff's Memo, p. 5. If

Plaintiff had somehow remained unaware of the sunsetting of SHA-1, it was made aware by virtue of Defendant's original motion.

VI.     **Reality Does Not Support the Claims Made by Plaintiff**

Plaintiff has taken it upon itself to raise the issue of Defendant's Motion to Dismiss in its Response to Defendant's motion for judicial notice. While this appears to be the wrong place for this particular issue, Defendant can offer a response. Plaintiff has alleged that Defendant was observed downloading. If this Honorable Court deems it appropriate to take judicial notice of the facts surrounding the technology, it will be clear that the allegation regarding observation cannot stand scrutiny. Judicial notice will allow this Court to better understand the power and imitation of the technology. It makes clear that the allegations cannot possibly be true.

Defendant's position is that judicial notice of the facts would allow this Court to see that the allegations in Plaintiff's Complaint are not supported by reality. Defendant asks for judicial notice in order to lay down some indisputable facts about how the technology in this case works. Facts beyond reasonable dispute can and should be known and noticed by this Honorable Court. Judicial notice of these facts would not convert Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted ("Motion to Dismiss") into a motion for summary judgment. Defendant does not offer evidence in its motion; Defendant, instead, offers accurate undisputed explanations of the technology that Plaintiff has misleadingly described in its pleadings.

On pages six to seven of Plaintiff's Response, Plaintiff brings up the issue of its specific averments in its Complaint. Plaintiff is fighting against the reality of the facts at hand. Plaintiff recognizes that certain assumptions, once dispelled, no longer support the pretense that

*Defendant* was "observed." It is no longer reasonable for Plaintiff to state that it "is informed and believes" that Defendant infringed or participated in a swarm.

Plaintiff's specific averments are nowhere to be found in Plaintiff's complaint. Yes, Plaintiff, has found that Defendant Michael Affrunti pays the Comcast bill or set up the account with the ISP. Assuming no spoofing or trackers that allow self-identification ("spoofing" and trackers will have to be defined in a separate motion, if necessary), Plaintiff has narrowed the field to a household, its neighborhood, and visitors. The specific averment that would make *General Electric* useful is the averment of the additional steps taken that pointed Plaintiff to Defendant. Plaintiff has been specific about certain aspects of the technology, but this does not overcome *Iqbal* and *Twombly*. When Plaintiff states that Defendant was observed, the statement is demonstrably false. Defendant requests judicial notice so that there will be no mistake about what Plaintiff reasonably believes regarding the identity of the computer user.

Plaintiff's Response regurgitates the limited and incomplete allegations against Defendant. Plaintiff's Response, p. 6-7. Given the clear limitation of what can be known from an IP address about an actor, Plaintiff's allegations (like the Indiana officers in *Milan v. Bolin*) demonstrate that Plaintiff lacks the specific allegation of any fact that makes it reasonable for Plaintiff (1) to have formed a belief that Defendant is the person whose computer use has led to the allegations; and (2) to have brought this suit against Defendant in a U.S. District Court.

Plaintiff knows how IP addresses work. Here are more sources that are not reasonably disputed regarding the limits of what can be determined from an IP address. The Seventh Circuit findings and opinion below, in addition to the findings of other courts, are sources whose accuracy cannot reasonably be questioned. They supplement what Plaintiff has already conceded as noted above herein at II(B).

Plaintiff has not disputed that an IP address is not sufficient to identify a particular user. Instead, Plaintiff seems to say, "Ignore what is known about IP addresses. Pretend that an IP address is a good way to identify a computer user, because that is Plaintiff's claim in the Complaint. Here, read the Complaint again. See! We said an IP address is enough." Nothing in Plaintiff's Complaint, however, suggests facts that make Plaintiff's "information and belief" reasonable or believable. There is a small chance that this is a proper defendant. Plaintiff is willing to take that chance. This uncertainty belies Plaintiff's previous statements offered to this Court that this was unquestionably the proper defendant. Plaintiff's motion for discovery before 26(f) conference.

### A. Courts have concluded that IP addresses have little probative value.

While Plaintiff shows specific details about how the IP address was obtained, Plaintiff offers no specific details about limits and powers of the information provided by an IP address. Such details would suggest to this Honorable Court that Plaintiff had no reasonable basis for bringing Defendant into this matter. The entire complaint is tied to an IP address, a piece of data with extraordinarily limited value. Plaintiff See, e.g., VPR Internationale v. Does 1-1,017, No. 11-02068 (ECF Doc. 15 at 2), 2011 WL 8179128 (C.D. Ill. Apr. 29, 2011) ("Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect . . . [t]he infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."). Other Seventh Circuit District Courts have also discussed this issue and reached the same conclusion. See, e.g., Malibu Media, LLC v. Reynolds, Case No. 12-cv-6672 (ECF Doc. 51 at 13) (N.D. Ill Mar. 7, 2013). Judge Baker of the Central District of Illinois stated that the individual using the IP address could be anyone who has visited. VPR Internationale v. Does 1-

1017 No. 11-02068(ECF Doc. 15 at 2) 2011 WL 817928 (C.D. Ill Apr.29, 2011). It is not a "reasonable calculation that the individuals connected to the subpoenaed IP addresses will have any discoverable information related to the current defendants." Pacific Century Int'l, v. Does 1-37, 282 F.R.D. 189, 195 (N.D. Ill. Mar. 30, 2012).

The Seventh Circuit Agrees. Even government involvement does not ensure that an IP address identifies a particular person or even a particular street address. The unreliability of an IP address as an identifier of an actor was described by Judge Posner, "On June 20, 2012, the Evansville police department became aware of Internet postings that made threats against the police; a typical posting said 'New Indiana law. You have the right to shoot cops.' The posts came from an Internet Protocol (IP) address at the home of 68-year-old Louise Milan and her 18-year-old daughter Stephanie (plus another daughter who wasn't however at home during the search)." Milan v. Bolin, 795 F. 3d 728.

"An IP address is like a phone number, but it is a number that identifies a computer or computer network and so enables a person operating another computer to communicate with it. The network in Mrs. Milan's home was an unsecured WiFi network, meaning that a person in the vicinity of the home — standing in the street in front of the house, for example — could access the network and send messages from it without needing to know a password. The threats against the police could have been posted by someone in her house on her computer, but equally they could have been posted through the unsecured network by someone near the house. Id.

"That the threats *might* have come from a person (or persons) inside the Milan home who *might* moreover be armed and dangerous was enough to make the police decide to have the house searched by the department's SWAT team forthwith, though, to repeat, the threatening messages could instead have emanated from outside the house because of the open network." Id.

"The defendants say they didn't know that Mrs. Milan's network was unsecured and therefore accessible by someone out-side the house who could use the unsecured network to send the threatening messages. Although the police had discovered that there was an unsecured network near the house, they hadn't bothered to find out whose network it was, as they could easily have done, precisely because it was unsecured and therefore accessible. Had they done that they would have known that it was Mrs. Milan's network and, since it was unsecured, that it might have been used (without her knowledge) by someone outside her home to send the threatening messages." Id.

### B.  Being Specific Has Little Meaning if the Facts are Untrue.

####    1.  **In a Just and Fair World. . .**

At the outset of this case, before any defendants were named, the presentation of exclusively true facts to this Honorable Court would have prevented this case from going forward. Plaintiff, in honesty, would have said, "Your Honor, we have no idea whether infringement has occurred. We recognize that it is highly unlikely that the infringement we allege connects any of the codefendants yet unnamed. Our methods use data security measures that are known to be insecure; therefore, we do not know that the file in question is our own copyrighted movie. The problem is that we also do not know whether the "infringer" lives in the house where we suspect infringement may have occurred. If the "infringer" was not a guest or a person who lives across the street or next door, we do not know which person in the house was the infringer (again, if there was infringement). We want to move forward, so we wish to name the person whose name we would get if you granted a subpoena. There may be a 5% (?) chance that the named person is our target. If that person is the wrong person, it will cost him or her

$10,000 to defend the case at a minimum. It will cost me, the Plaintiff, almost nothing. May we have a subpoena for the name of the person who pays for an ISP account? Usually, it turns out not to be the person we seek. Generally, we collect money regardless of the underlying facts, so it does not matter to us *who, if anyone,* has infringed."

      **2.    Accurate and True Facts Undercut Plaintiff's Every Filing and Act in the instant case.**

Plaintiff has missed the point when it *offers General Electric Capital Corp. v. Lease Resolution Corp.* in its Response. Response, II. At any time a court may take judicial notice of adjudicative facts. In this case, Plaintiff and Defendant agree that this Honorable Court may examine the allegations in the complaint to see if they pass muster.

Consider, for example, an allegation that a blind woman identified a defendant by the unusual color of that defendant's tie that the woman had seen. It was a unique color on a one-of-a kind tie that had never been seen before or since. If this Court were to read that allegation without knowing the meaning of the word blind, the identification of the defendant might pass muster. If there had been a typographical error and the allegation described the woman as blond instead of blind, the identification might also pass muster. Blindness must be understood to recognize the insufficiency of the allegation.

In Plaintiff's Complaint, the identification of "each Defendant by the IP address assigned to that Defendant by his or her ISP" makes as little sense as that of the blind woman seeing a blue tie. Complaint, para.14. Denying the Court an understanding of the limitations of an IP address is tantamount to denying the definition of the word "blind."

As Plaintiff has agreed that this Honorable Court may examine the allegations in the complaint to see if they pass muster, surely Plaintiff must agree that the Court be permitted to know the meaning and limits of the allegations. Plaintiff, in fairness and as an officer of the

court, must agree that this Honorable Court have a complete understanding of the terms that are used in the complaint.

Plaintiff repeatedly refers to a need for evidentiary support for adjudicative facts. Id. The rule requires a request and necessary information. Fed. Rul. Ev. 201. This Honorable Court continues to be free to take notice as it receives information. The request was made and Defendant provided necessary information.

Rule 201 does not require applicability to be presented in the motion. Instead, facts that are outside of reasonable controversy are to be judicially noticed so that courts may dispense with the need for testimony. Fed. Rul. Ev. 201 Notes, Pub. L. 93–595, §1, Jan. 2, 1975, 88 Stat. 1930; Apr. 26, 2011, eff. Dec. 1, 2011.

Defendant's position is that Plaintiff's every fact should be true. All of Plaintiff's documents should be amended to be truthful where Plaintiff has strayed from true facts so that this Honorable Court may proceed with the reasonable belief that officers of the court as well as the parties do not intentionally mislead the other parties, the other attorneys, other members of the public, or this Court.